## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| TONI A. CALABRESE, MARINA A. MALIK, and KARISSA FRINK, *individually and on behalf of others similarly situated*, <br><br> Plaintiffs, <br><br> vs. <br><br> DEVA CONCEPTS, LLC, d/b/a DevaCurl, <br><br> Defendant. | CASE NO: <br><br> CLASS ACTION <br><br> JURY TRIAL DEMANDED <br><br> <u>RELATED CASES:</u> <br><br> <u>Lead Case:</u> <br> 1:20-cv-01234-GHW <br><br> <u>Related Cases:</u> <br> 1:20-cv-01657-GHW <br> 1:20-cv-02045-GHW <br> 1:20-cv-01520-GHW <br> 1:20-cv-02047-GHW <br> 1:20-cv-02930-GHW <br> 1:20-cv-02156-GHW <br> 1:20-cv-02662-GHW |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs, TONI A. CALABRESE, MARINA A. MALIK, and KARISSA FRINK (together the "Plaintiffs"), bring this Class Action Complaint against Defendant Deva Concepts, LLC d/b/a "DevaCurl" ("Defendant"), individually and on behalf of all others similarly situated, and complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys:

1

## **NATURE OF THE ACTION**

1.      This is a civil class action brought by Plaintiffs on behalf of consumers who purchased Defendant's "DevaCurl No-Poo Original" non-lathering conditioning cleanser (the "No-Poo Product"), DevaCurl One Condition® Original hair-conditioner, DevaCurl Light Defining Gel, DevaCurl Low-Poo Original cleanser, DevaCurl Low-Poo Delight cleanser, DevaCurl No-Poo Decadence cleanser, DevaCurl One Condition® Delight hair-conditioner, DevaCurl One Condition® Decadence hair-conditioner, Melt into Moisture Mask, Styling Cream, DevaCurl Leave-In Decadence conditioner, Super Stretch Coconut Curl Elongator, Wavemaker, and DevaCurl Ultra Defining Gel (collectively "the Products") which are used for personal cosmetic purposes. Plaintiffs seek damages and equitable remedies for themselves, and for the Class (defined below).

2.      Defendant formulates, manufactures, advertises, and sells the Products to consumers throughout the United States, including in the State of North Carolina.

3.      In 2002, Defendant rose to prominence when it created and developed the formula for the DevaCurl No-Poo Original, i.e., the No-Poo Product, which is marketed as containing no sulfate, and is also marketed as an "innovative new haircare category" and a "game-changing alternative to traditional shampoo."[1]

4.      Defendant further markets the No-Poo Product as a "first-of-its-kind, no-suds conditioning cleanser" that is "free of sulfates, parabens, and silicones" and that is used "to gently cleanse curls without stripping the natural oils they need to look healthy, bouncy and simply gorgeous."[2]

---

[1]https://www.devacurl.com/us/curl-101/our-story (last visited February 19, 2020).
[2] *Id.*

5.    One of the founders of DevaCurl was quoted as saying that the No-Poo Product "allows your scalp to regulate, and your hair to become more what nature intended."[3]

6.    Consumers purchase Defendant's No-Poo Product because it does not contain sulfate, and because of Defendant's marketing, which claims that the No-Poo Product "allows your scalp to regulate, and your hair to become more of what nature intended."[4]

7.    Consumers seek out the No-Poo Product because it "provides maximum frizz prevention and slows color fading."[5]

8.    Defendant and publications have suggested that those with curly hair should not use shampoo because it dries out people's curls when their hair is being washed.[6]

9.    The No-Poo Product was touted as the answer to this age-old issue and "does not contain lather, or any of the sulfates found in shampoos that dry out curls."[7]

10.    DevaCurl's No-Poo Product has been deemed (by Defendant) the shampoo that still moisturizes and is made with a peppermint scent.[8]

11.    Many have used the No-Poo Product as a complete shampoo replacement once or twice a week to cleanse hair rather than using traditional shampoo.[9]

12.    Therefore, consumers seeking a complete alternative to traditional shampoo end up purchasing the No-Poo Product.

---

[3] https://www.nytimes.com/2010/09/30/fashion/30Skin.html (last visited February 19, 2020).
[4] *Id.*
[5] https://www.amazon.com/gp/product/B0030LF1KA?pf_rd_p=ab873d20-a0ca-439b-ac45-cd78f07a84d8&pf_rd_r=7JK77ENMJZXVFMJHKQWJ, (last visited February 19, 2020).
[6] http://nymag.com/strategist/article/best-curly-hair-products-review-devachan-no-poo-conditioner.html. (last visited February 19, 2020).
[7] *Id.*
[8] *Id.*
[9] https://www.glamour.com/gallery/best-curly-hair-products, (last visited February 19, 2020).

13.     Since the creation of the No-Poo Product, Defendant has formulated, manufactured, marketed and sold many accompanying products for the same purposes to consumers in this District and across the country.

14.     Consumers pay a premium over the cost of traditional retail and salon shampoos for Defendant's Products, based upon the representations above.

15.     However, despite the "DevaCurl phenomenon" that has caused many curly haired consumers across the United States to purchase and use the Products, use of the Products causes scalp irritation, excessive shedding, hair loss, thinning, relaxing of curl, breakage, and/or balding during normal use by consumers.

16.     Indeed, thousands of consumers have reported their hair failing out shortly after or during actual use of the Products.

17.     Defendant provides no warning about these consequences, and in fact makes numerous assertions about the gentle and beneficial nature of the Products.  For example, Defendant's website makes statements relating to its No-Poo Product such as "[t]raditional shampoo can be too harsh for curls.  That's why we made No-Poo Original!  The non-lathering formula with peppermint and grapeseed oil gently cleanses without stripping the natural oils your curls need."[10]  With regard to its One Condition® Original product, Defendant's website states "When it comes to curls, it's all about condition, condition, condition.  So apply, rinse and repeat as often as needed!"[11]  These statements and others were and are false, deceptive, and misleading and have harmed Plaintiffs and the Class.

---

[10]https://www.devacurl.com/us/products/cleansers/no-poo-original/v/29767841742930 (Last visited February 19, 2020).
[11]https://www.devacurl.com/us/products/conditioners/one-condition-original/v/29778541346898

18.     Disturbingly, Defendant appears to be aware of the issues with its Products but conceals and fails to disclose that the Products cause hair loss and shedding, by intentionally blaming other risk factors such as giving birth, stress, scalp buildup, dandruff, losing weight, certain illnesses, and more.[12]

19.     Defendant conceals and fails to disclose the defective nature of its Products by actively misleading consumers into believing that the hair loss and shedding caused by the Products is "normal" and "common," that even excessive shedding of over 100 strands of hair per day is "common," and that shedding is not preventable.[13]

20.     Defendant unambiguously has knowledge of the hair loss and scalp irritation caused by the Products.  For example, Defendant has received multiple FDA complaints of hair loss and scalp irritation beginning in February 2018.  There have been hundreds of complaints posted on social media sites like Facebook.  Social media influencers have spread the word about the hair loss and scalp irritation caused by Defendant's Products.  Major media outlets including the ABC television affiliate in New York City have broken the story.[14]  Defendant has explicitly acknowledged the reports of hair loss and scalp irritation associated with its products, going so far as to post an explanatory statement on its website, prominently featured with a link entitled "a message for our devas" in the top right corner of the website's homepage.[15]

21.     Despite notice and knowledge of the problems caused by the Products, Defendant has not recalled the Products, has not provided any warnings of the known risks, has denied that

---

[12]  https://www.devacurl.com/blog/hair-shedding-101/ (last visited February 19, 2020).
[13] Id.
[14]https://abc7ny.com/health/customers-say-curly-styling-products-made-their-hair-fall-out/5906690/ (last visited February 19, 2020).
[15] https://www.devacurl.com/us/deva-community-statement (last visited February 19, 2020).

the Products cause the reported health issues, and has not offered its customers any compensation for their damages.

22.     Had Plaintiffs and other Class members known that Defendant's Products would cause hair loss, scalp irritation, and other problems, they would not have purchased the Products.

23.      Plaintiffs and each of the Class Members have been damaged and suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices as set forth herein by Defendant and seek compensatory damages and injunctive relief.

24.     Given the massive quantities of the Products sold all over the country, this class action is the proper vehicle for addressing Defendant's misconduct and for attaining needed relief for those affected.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from Defendant.

26.     This Court has personal jurisdiction over Defendant because it transacts business in the United States, including in this District, has substantial aggregate contacts with the United States, including in this District, engaged in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed itself of the laws of the United States.

27.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, and Defendant maintains its principal place of business in this District.

## PARTIES

28.    Plaintiff Toni A. Calabrese is a resident of Wake County, North Carolina who has purchased and used DevaCurl Products within the relevant time period. Plaintiff Calabrese experienced hair damage after using DevaCurl Products.

29.    Plaintiff Marina A. Malik is also a resident of Wake County, North Carolina who has purchased and used DevaCurl Products within the relevant time period. Plaintiff Malik experienced scalp irritation and hair damage after using DevaCurl Products.

30.    Plaintiff Karissa Frink is a resident of Wake County, North Carolina who purchased and used DevaCurl Products within the relevant time period. Plaintiff Frink experienced scalp irritation and hair damage after using DevaCurl Products.

31.    Defendant Deva Concepts LLC is incorporated in Delaware with its principal place of business at 560 Broadway Suite 206 New York, NY 10012 United States.

## FACTUAL ALLEGATIONS

32.    At all relevant times, Defendant has marketed the No-Poo Product (and related Products) through national marketing and advertising campaigns as being "free of harsh ingredients," a complete replacement for traditional shampoo that creates healthy curly hair without color fading, and as a "game-changing alternative to traditional shampoo."[16]

33.    On Defendant's website, it gives a three-step process for using the No-Poo Product and the DevaCurl One Condition® Original conditioner. Step one is "Wet curls and apply a generous amount to your scalp, scrubbing it in. Remember it won't lather, but it's still working!".[17]

---

[16] https://www.devacurl.com/us/curl-101/product-philosophy (last visited February 19, 2020).
[17] https://www.devacurl.com/us/products/cleansers/no-poo-original/v/29767841742930 (last visited February 19, 2020).

34.    For step two it states "Rinse thoroughly by scrubbing your scalp and letting the water move No-Poo Original through your ends." [18]

35.    Step three states, "Follow with One Condition® Original for additional moisture."[19]

36.    However, despite using Defendant's three step process, the No-Poo Product causes users to sustain scalp irritation, relaxing of curls, hair loss, and/or balding during normal use. Users have hair fall out in varying degrees during and immediately after use. The hair loss, scalp irritation, and balding suffered by Plaintiffs and Class Members is embarrassing and can be extreme in certain instances.

37.    The hair loss suffered by Plaintiffs and Class Members is not limited to the No-Poo Product. Indeed, many consumers, including Plaintiffs, have experienced scalp irritation, hair loss or damage, "shedding" and/or "thinning" after using Defendant's Products. Some users have had hair fall out in "clumps" and have suffered extreme distress as a result.

38.    Consumers of the Products pay a premium for them far and above what normal hair care products cost. For example, Defendant's No-Poo Product sells for $46.00 as compared to similar retail products sold at Target for as little as $3.99,[20] a difference of more than $42.

39.    Consumers pay a premium for Defendant's Products because of the benefits Defendant claims they provide above and beyond normal hair care products. For example, with respect to Defendant's No-Poo Product, Defendant claims that the No-Poo Product is "Sulfate

---

[18] *Id.*

[19] *Id.*

[20] *Compare* https://www.sephora.com/product/no-poo-P378324?skuId=1784578&om_mmc=ppc-GG_1918213323_70847768576_pla-419288853760_1784578_353573794076_9021734_c&country_switch=us&lang=en&gclsrc=aw.ds&ds_rl=1261471&gclid=EAIaIQobChMItJr6jNG_5wIVRtbACh3WQw2KEAYYBCABEgLOjvD_BwE *with* https://www.target.com/p/suave-professionals-2-in-1-shampoo-and-conditioner-32-fl-oz/-/A-75560945 (last visited February 19, 2020).

Free," that it is used to "gently cleanse," that it is not "harsh" or made with "harsh ingredients," that it gives "your curls what they need and nothing they don't," and that it comes with benefits such as the ability to keep hair from drying out and maintain composure.

40.     However, neither the product packaging nor any other advertising from Defendant warns users that the Products cause scalp irritation, excessive shedding, relaxing of curls, hair loss, thinning, breakage, and/or balding, or any related injury during normal use. For example, nowhere on the labeling of the No-Poo Product does it mention scalp irritation, excessive shedding, relaxing of curls, hair loss, thinning, breakage, and/or balding, or any related injury during normal use:



21 https://www.amazon.com/gp/product/B0030LF1KA?pf_rd_p=ab873d20-a0ca-439b-ac45-cd78f07a84d8&pf_rd_r=7JK77ENMJZXVFMJHKQWJ  (last visited February 19, 2020).





41.    Similarly, nowhere on any of the packaging of other Products does it state that scalp irritation, excessive shedding, relaxing of curls, hair loss, thinning, breakage, and/or balding, or any related hair injury occurs from normal use of the Products.[26]

42.    With regard to its One Condition® Original product, at all relevant times, Defendant has marketed this product through national marketing and advertising campaigns as a premium product that is "free of harsh ingredients" and made with "nourishing, hydrating ingredients."

43.    Defendant's website states "When it comes to curls, it's all about condition, condition, condition.  So apply, rinse and repeat as often as needed!"[27]

44.    Incredibly, on Defendant's website, Defendant refers to hair loss and thinning as shedding and claims that this shedding of hair is "normal":

> If you have curly hair, chances are you've dealt with hair shedding. **For most of us, it can be concerning when hair falls out on a daily basis, but it's totally normal.** But, what causes hair shedding? How much hair loss it too much? And, how can you prevent it? Today we're here to give you the lowdown on everything you need to know about hair shedding.[28]

45.    Defendant further explains hair loss is more prominent in curly-haired women because "Sadly, shedding is more common with curly-haired gals because we don't wash or brush our hair as often as our straight hair counter parts."[29]

46.    Defendant further attributes shedding to "giving birth, stress, scalp buildup, dandruff, losing weight, certain illnesses, and more."[30]

---

[26] *See* Appendix A attached hereto.
[27] https://www.devacurl.com/us/products/conditioners/one-condition-original/v/29778541346898 (last visited February 19, 2020).
[28] https://www.devacurl.com/blog/hair-shedding-101/ (last visited February 19, 2019).
[29] *Id.*
[30] *Id.*

47.    Defendant states that "If you're losing more than 100 strands of hair per day, you're dealing with excessive shedding, which is also fairly common."[31]

48.    Further, Defendant claims that shedding is not preventable. On its website it states:

**Can I prevent shedding?**

In short, not entirely. While you can lessen the amount of hairs that shed, you'll never be able to completely stop shedding. See your hairstylist or dermatologist if you're really concerned.[32]

49.    Defendant further includes a list of recommendations to lessen shedding. None of the recommendations to reduce shedding include ceasing the use of the No-Poo Product or any of the Products:

**How can I lessen the shedding?**

1.    Find the right <u>cleanser and conditioner</u> for your curl type. This ensures that your curls won't dry out or be damaged which can lead to shedding.

2.    Remove build up. Product build up and dandruff can block your roots and lead to shedding, so be sure to <u>clarify</u> and <u>exfoliate</u>.

3.    Make sure to detangle your hair every time you finish washing your hair. Using a pre-poo (like <u>Wash Day Wonder</u>) before cleansing and finger detangling afterwards can make a world of difference.[33]

50.    Above all, far from being the panacea promised by Defendant, the Products cause scalp irritation, excessive shedding, hair loss, relaxing of curl, thinning, breakage, and/or balding. The hair loss is not *de minimis*—consumers, who suffer hair loss often lose significant amounts of hair-and the hair loss persists as long as the user uses the Products.

---

[31] *Id.*
[32] *Id.*
[33] *Id.*

51.    Many consumers who suffered scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding from the Products saw their symptoms stop by discontinuing their use of the Products.

52.    Every consumer who purchased the Products without the true facts about the Products and disclosure of the inherent health risks prior to purchase was injured at the point of sale when, instead of obtaining safe, natural, proven, strengthening, and conditioning cleanser that makes curly hair look and feel healthy, conditioned, soft, defined, shiny, and frizz-free, consumers obtained Defendant's unreasonably dangerous and defective Products. Consumers have been further injured by way of requiring expensive professional hair treatment and medical treatment as a result of injuries caused by the Products.

53.    By marketing, selling and distributing the Products from New York to purchasers throughout the United States, Defendant made actionable statements that the Products were free of defects and safe and fit for their ordinary intended use and purpose.

54.    By marketing, advertising, selling and distributing the Products from New York to purchasers throughout the United States, Defendant made actionable statements that the ordinary use of the Products would not involve undisclosed safety risks. Further, Defendant concealed what they knew or should have known about the safety risks resulting from the material defects in the Products.

55.    Defendant engaged in the above-described actionable statements, omissions, and concealments with knowledge that the representations were false and/or misleading and likely to mislead reasonable consumers. Alternatively, Defendant was reckless in not knowing that these representations were false and misleading at the time they were made. Defendant had and has

exclusive access to data pertaining to the Products' defect that Plaintiffs and members of the proposed Classes could not and did not have.

56.     Therefore, Plaintiffs, on behalf of themselves and the Class, hereby bring this action for violations of various state and federal laws.

### Defendant's Misrepresentations and Omissions are Material to Consumers

57.     Consumers seek out Defendant's Products specifically for the benefits that Defendant claims they provide: namely, to promote healthier curly hair than other traditional cleansers and conditioners. Consumers purchase the Products due to Defendant's claim they will not dry out curly hair and maintain maximum color.

58.     Consumers also pay a premium for the Products over comparable hair products on the market.

59.     Defendant misleads consumers into thinking they purchased a premium product with greater health benefits and even say that excessive shedding is common, normal and non-preventable; however, users have revealed that in fact the Products cause hair loss, scalp irritation, relaxing of curls, thinning, breakage, and balding during normal use.  Further, consumers have also shown that changing from using the Products eliminates hair loss.

60.     Risk of hair loss, scalp irritation, relaxing of curls, thinning, breakage, or balding are material risks to consumers.

61.     Failing to include hair loss, scalp irritation, relaxing of curls, thinning, breakage, balding, on the labeling, product packaging, and by misleading customers by referring to hair loss as shedding and stating that shedding is "normal," "common," and "non-preventable" are material misrepresentations for consumers of the Products at issue here.

62.    Defendant further misleads consumers into thinking they can and should use unlimited amounts of the Products, through statements such as ""When it comes to curls, it's all about condition, condition, condition.  So apply, rinse and repeat as often as needed!"[34]

**Plaintiffs' Experiences**

63.    Plaintiff Calabrese purchased and used the Products over the last 10 to 12 years from third-party retailers.

64.    Plaintiff Calabrese relied on the representations on the packaging, labeling and marketing of the Products when deciding to purchase and use them.

65.    During the time she used the Products, Plaintiff Calabrese began to notice the problems alleged herein.  For instance, after use of the Products, Plaintiff Calabrese noticed that within the last year, she began to lose excessive hair while in the shower, and more of it when she applied the Products to her hair.  She soon began to notice bald patches around her hairline and on the top of her head.  Her hair is noticeably thinner than it was at the time she began using the Products and has become dry and frizzy, changing her curl pattern drastically.

66.    Plaintiff Malik purchased and used the Products over the last 5 to 6 years from third-party retailers.

67.    Plaintiff Malik relied on the representations on the packaging, labeling and marketing of the Products when deciding to purchase and use them.

68.    During the time she used the Products, Plaintiff Malik began to notice the problems alleged herein.  For instance, after use of the Products, Plaintiff Malik's hair started to thin such that the Products would weigh it down and make it appear oily, advancing to the point that Plaintiff

---

[34]https://www.devacurl.com/us/products/conditioners/one-condition-original/v/29778541346898 (last visited February 19, 2020).

Malik had several bald spots and thinning all over her head. As a result of using the Products, Plaintiff Malik's developed extremely itchy areas on her scalp and experienced the formation of scabs on her scalp – something she had never experienced before. Plaintiff Malik documented these issues in the following representative images:

 



69.

70.    Plaintiff Frink purchased and used the Products from third party retailers consistently from 2015 to 2020.

71.    Plaintiff Frink relied on the representations on the packaging, labeling and marketing of the Products when deciding to purchase and use them.

72.    During the time she used the Products, Plaintiff Frink began to notice the problems alleged herein.  For instance, during the time she used the Products, she lost approximately 40-50% of her hair, developing bald patches and losing hair length.

73.    Plaintiffs are in the same Class as all other consumers who purchased Defendant's Products during the relevant time period.  Plaintiffs and Class Members purchased worthless products that caused scalp irritation, hair loss, balding, or otherwise failed to perform as they were intended, i.e., promoting healthy curly hair.  Plaintiffs and the Class Members were in fact misled by Defendant's omissions and misrepresentations in respect to the Product.  Plaintiffs and Class Members would have purchased other hair care products if they had not been deceived by the misleading and deceptive marketing and/or labeling of the Product.

**Additional Common Facts**

74.    Plaintiffs' experiences are by no means isolated or outlying occurrences. Indeed, the Internet is littered with stories from other Class Members complaining of the same issues with the Products as Plaintiffs have alleged herein.

75.    As reported by ABC News, stylist and author Stephanie Mero, who goes by the handle 'thecurlninja' on social media, had been a longtime proponent of DevaCurl's Products, using

them to maximize her customers' natural curls in her salon and encouraging her thousands of followers online to use them to help bring out their own curls.[35]

76.    According to the report, Ms. Mero says that changed when she started to see damage in her own hair. She eventually stopped using the Products and recommended that her clients do the same.

77.    Before and after photos show the damage that Defendant's Products caused to Ms. Mero's hair:

**Before**:



**After**:



78.     As further reported, Ms. Mero went on to create a Facebook group for others who believe DevaCurl is behind their hair damage. Currently, there are more than **35,000 members**.

79.     According to the report, Ms. Mero says she'll continue speaking out about the issue until DevaCurl issues a recall and the FDA takes the issue more seriously.[36]

80.     According to reports, Ms. Mero isn't alone. Another famous Youtuber with more than 200,000 subscribers, posted her own video on January 31 where she speaks about her own experience with Defendant's products.  See https://www.youtube.com/watch?v=nuo8UCcyDhg ("Why I Stopped Using DevaCurl") (last visited February 19, 2020).

---

[36] https://www.abcactionnews.com/news/national/florida-hairstylist-among-customers-claiming-devacurl-products-caused-serious-damage (last visited February 19, 2020).

81.     According to reports, the YouTuber tells viewers to immediately stop using the Products and apologizes for recommending them: "For the first time in my life I experienced dandruff," Malik said. "My scalp was on fire on some days, I didn't know what it was."[37]

82.     Similarly, a thread on Sephora originally posted in 2016 is now flooded with comments from customers complaining about the products and looking for answers.[38]

83.     The complaints are endless:



84.     Additional online complaints-dating back several years, are documented below:

•       https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on March, 20, 2016, updated on December 4, 2019: "I started using DevaCurl No Poo and One Condition in early January and used it until about a week ago. My hair was gorgeous but I wasn't able to get my hair really clean and developed some crazy dandruff which

---

[37] *Id.*
[38] https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/m-p/2411473 (last visited February 19, 2020).

I've NEVER had a problem with before. I also noticed that I was shedding more hair than I was used to and that my hair seemed to be thinning a little. The shedding seem to get worse and that is the main reason that I stopped using it. When I switched back to Ogx coconut curls I was no longer shedding like crazy. Has anyone else had either of these issues while on these products?"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on December, 4, 2019: "I had long hair to my belly button and after switching everything to deva curl I was in denial of my hair loss until my hairdresser pointed out how my hair was shedding super bad and how it was thinking out. It's been a couple months now and my hair is getting back to normal. Devacurl didn't work for me and now I'm dealing with the issues it caused. I would just cry because my hair was falling out in big clumps!! Now I just use Olaplex for most my hair needs. Olaplex #3 has been helping with the bonding of my hair. I feel so sad you had to go through this as well."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on November, 4, 2019: "The same thing happened to me a couple of years ago. I went to a Deva salon in Nashville, TN. After my appointment I purchased the product line that was used. From my 1st time using it at home my hair began shedding in large clumps. I tried it one more wash day and the same thing happened. Once I stopped using the products the clumps of hair ceased from falling out. I informed my stylist at the salon and she told one of the Level 3 stylists who has done my hair there before too. Both said they had never heard of what I had experienced. Of course I'm thinking if the large clumps of hair that came out were that noticeable to me that they had to have seen it when they did my hair."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on November, 7, 2019: "This is crazy reading these posts! I went "no poo"

over 10 years ago and hit the curly girl method HARD! Used all DC products and my hair was ridiculously gorgeous. I'm a redhead and typically shed a lot so I didn't really think too much about it but I remember thinking damn this is a lot! My stylist at the time commented on increased shedding but just assumed it was normal. She started getting out an extra towel to wipe the hair off her hands after washing my hair!! Gradually my hair started feeling dry and brittle, especially after ArcAngel and whatever the deep conditioner is. I started using new products and once I got rid of all DC products my hair was soft and happy again. Lesson learned!

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on November, 6, 2019: "Hi - so glad I found your post and many others about how Deva Curl products ruined my hair !! First it looked good but within 4 months of use my hair became dry , brittle , broom like and was falling out !! I thought something was wrong with my health and started taking hair & skin vitamins and complained to the hair dresser who recommended deva curl to me . She had no idea it was the product that is absolutely horrible!! I spent over $100 on all the products and am now very upset trying to repair my hair ! If anyone has a shampoo they recommend let me know . For now I'm going back to using Quidad and praying my hair grows back thick again & my curls come back . Good luck to you & everyone out there who experienced what I did - I wish we could all sue them !!!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on November, 8, 2019: "Me too! I thought it was menopause but it's Deva Curl products! There's a Facebook group about the issue too. I've emailed Deva Curl to return my products for a refund. Hope they will be responsible enough to do at least a refund. Horrible hair loss! Even my daughter had horrible hair loss.

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on September, 12, 2019: "I am mind-blown at this thread. I was alwaysss the kid with hair so thick that hair stylists said something about it every time I had my hair cut. A year ago I noticed hair loss starting. And a year ago I started Deva Curl styling products. I don't use their hair washing products. In June, I got my first Deva cut and she told me I have thin hair, and that was crazy to hear. It's now to the point that I have super thin areas on each side of my forehead, which made me go to the doctor. I had my hormones checked and all kinds of other blood work done, and it's all normal. I put the thoughts together and realized the hair loss started the same time I started Deva products. Then I found this thread. I am switching ASAP. Please, if anyone knows of cruelty-free products that give poofy, frizzy, curly hair definition and frizz control, help a girl out!!

and Deva Curl... thanks for that medical bill!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on September, 4, 2019: "Yes. I used the No Poo Shampoo and Conditioner for two months. Every time I used these products my hair fell out in clumps during the shampoo and conditioning process. Initially, I thought this was me loosing dead hair, but it was more than that. I discontinued use and my hair slowed down dramatically in falling out. I've continued to use the styling products, but I'm questioning this now. Some days my hair looks amazing, and other days these products make my hair look terrible (i.e. stringy, frizzy, broomstick dry, distorted curl patterns). I don't have heat damage because I love wearing my hair flowy and curly, so it's not that. I'm very confused by these experiences! Overall, I'm not convinced it's worth the money. I've been reading about other women who've had similar experiences, which is alarming. I hope all of us continue to share. Granted, there are pros to the styling products, but the cons are pushing

me away. I've watched the videos on how to use the products and I'm skilled at styling my hair, but all of this isn't adding up for me. I hope this helps!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on August, 15, 2019: "I have had the exact same issues. When I started doing the curly girl process i lost a lost of hair, but I had not 'molted' for a while, so I wrote this off. I have continued to see molting and a lot of breakage as well, tho. The more concerning issue was the extreme itching and what was almost like flaky acne. Bumps on my scalp that hurt and itched. I have found that the Arc Angel gel is the worst offender and now that I have stopped using that it has gotten a lot better. The products make my hair look great, but I wish I knew what ingredient was causing this issue. Spent SO MUCH MONEY on these products and am not excited about buying more products that may have the same stuff in them that will cause the same issue."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on August, 13, 2019: "I had the same reaction, I never really had dandruff until using devacurl. I bought the shampoo & conditioner & didn't finish either. My head was super itchy along with dandruff & hair-loss. It did make my hair a little curlier but overall I thinks it's a terrible product."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on May, 19, 2019: "Yes! My hair is thin, fine, frizzy, and curly. Deva curl took half of the little bit of hair I had! I'm so upset! I finally grew my hair long. And now I have to crop it!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on August, 12, 2019: "Hi, just wanted to let you know you are not alone! Other men and woman have had the same results from using Deva Curl products in this last years

specially in 2019 which the major complaints are excessive hair loss, very dry and broken hairs and irritation. Like most people that call Deva Curl and complained they always get an answer that puts the blame on us and never the products. We have started a support group page on Facebook called "Hair and Scalp Issues from Deva Curl Products - You are not Alone! We hope that you will join us and share your story so we can help many men and women around the world to help them figure out that they are not crazy, that is not their hormones or their old age and that there is a chance that it was their products they belived in that did this to them!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on April, 10, 2019: "I'm having the exact same problem right now!!!!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on April, 28, 2019: "Me too! I have been using the Devacurl no poo original and one condition since Christmas. I just recently had a deva cut and purchased the products recommended and I have been losing a lot of hair. My hair feels thinner, looks thinner, and my hair just is not the same."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on March, 24, 2019: "This can't be a coincidence. So I started using the no-poo almost exclusively on my wash days except for once a month when I used build up buster. Before that I alternated with the low poo Every other wash day and I never experienced shedding. Now that I started using mostly noo poo I'm seeing crazy shedding and breaking. I just switched to Oidad VitalCurl and can't report on results but first impressions my scalp feels clean and my hair looks nice. I also read online that noo-poo in hard water areas can cause PH imbalances in the hair, which can lead to shedding. I know I have hard water so I'm hoping by using new brands I'll be able to use DevaCurl again someday because for the first 2 years it was great."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on February, 10, 2019: "I've used DivaCurl for a while and wonder now if it's making my hair thin out. It may be because I'm an little older, but I never had a problem before. The no-poo option works well for me because sulfates dry out my hair really bad. I think I'll switch over to Carol's Daughter, Mixed Chicks, or Shea Moisture to see what happens"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on February, 7, 2019: "I finally had to stop using their products, which broke my heart because they made my hair so beautiful...I really loved my unruly, curly, red Irish hair for the first time ever. I used it for probably two years. I started noticing my hair thinning, which was disturbing because I have always had extremely thick hair. Finally, I couldn't ignore it anymore this year when I could see through to my scalp, and I looked balding when my hair was wet. My ponytail is barely anything now, and my long hair (which I took such a long time to grow and care for) is limp and straggly looking when I don't take great care to fluff it up with thickening products. I was losing clumps of hair not just in the shower (where I would find whole chunks wrapped around my hands), but all over my bathroom floor, my bed, my couch...literally anywhere I had been, there was hair to clean up. . Horrifying at any age, and especially in your mid twenties. I have also developed very sensitive spots on my scalp, where I feel "pinpricks" in the front whenever wearing a ponytail (no matter how loose it is).

I finally saw a dermatologist that specialized in women's hair loss. She agreed I had hair loss, but could not give a definitive answer as to why and started me on spironolactone to suppress any excess androgen (although my hormone levels were tested and found to be normal). Around the same time I switched from Deva products to more generic (but curly-girl friendly) products. After a couple months, I started to notice I had probably 1/5 the amount of hair loss, and it finally

seemed normal. No more sweeping up hair from the bathroom floor every single day.

I was able to purchase the Deva gel again (the one I had been using in the interim shaped my curls nicely, but left it too frizzy and they fell out quickly). Each time I use this, I am right back to crazy clumps of hair in the shower and on the floor again. I realized something in the Devacurl *has* to be contributing to my hair loss over the last two years, and especially the last year before I finally got medical help. I don't know if it's an allergy or what, I have no known problems. But it's sort of a relief to see other people reporting these problems, too.

If anyone has recommendations for products with similar hold and frizz-taming capability, I really miss loving my hair. It used to be my proudest feature (after a lifetime of hating and fighting it), and now I feel like it's something I dislike about myself again."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on December, 1, 2017: "I'm having the same experience with DevaCurl o Decadence. It does an incredible job of detangling but I'm losing my hair. The folks here saying this is about perception don't get it. I started using this about two years ago and wasn't attributing it to the product because it was happening before that - from my attempts to detangle it. The devacurl worked for awhile, but then recently, and particularly in the last few months, my hair has been coming out in small clumps, from the root whenever I use it. I notice it because I've been washing and conditioning more regularly for a newer style. It doesn't happen when I use other conditioners, and I know the difference because when I would go back to the Decadence (for the detangling) my hair would be coming out in clumps in my hands. Also, when so many people are saying the same thing, clearly there is an issue, so it's not just about our perception. I'm done with this product. If anyone has any detangling recommendations - not just products, but techniques too, I'm happy for them."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on October 17, 2019: "The same thing happened to me. Hair loss in Clumps, scalp irritation, and very noticeable loss in volume. I can see my scalp now. I feel like crying knowing that I have an entire box of products to throw away that cost me $100's. I'm terrified now of this happening with other "reputable" distributors. I can't believe this. It has really hit my self-esteem hard and my faith in curl brands.

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on February, 2, 2017: "I have been using this for a few months and I have lost TONS of hair, I even went to get my hormones checked, they were on point!! I have lost so much it's noticeable and looking completely different including parting all over... very unhappy and nervous , I am going to stop using it and see if it make a difference!

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on August 24, 2018: "My hair was so thick and it grew, I kid you not, nearly 3 inches a month. I measured. And I cut 6 inches off my very long hair to see if it would help curls form when I switched to Deva Curl. Well... after almost 2 months, my hair had gotten shorter. The breakage is horrible and it's falling out in clumps! Not just in the shower either! I don't dye my hair, I don't use any heat on it at all, and I don't use any product except the wave maker stuff from Deva Curl. So, it had to be switching to Deva Curl. I also only wash my hair once a week. So, I know i'm not over washing it. I was also using the buildup buster every 2 washes.

I am nearly in tears from how much hair it caused me to lose.

I'm going back to Lush ASAP. I'll never switch from Lush again. No matter what hair products I use from there, my hair stays beautiful, thick, and fast growing!

I had to get supplements just to get my hair to start growing again... unfortunately my nails were still growing fast and strong. So, I'm having to trim them 3 times a week. Ugh. Don't let anyone talk you into sticking with Deva Curl! If you get a feeling that it's messing your hair up, STOP! I wish I would have after hair started coming out the first shower... but I thought it was just because it wasn't as easy to work through my hair as my Lush products were. I'm heartbroken you guys."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on May, 2, 2019: "Me too I have never had thin hair its so thin and limp and disgusting. Im so sad"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on September 22, 2016: "I feel like i have been losing a lot of hair. I notice its thinner. When i use my no poo shampoo and conditioner, tons of hair comes out. I am curious too if thats the problem. For now, i am going to use my shea moisture shampoo and conditioner to see if shedding slacks off."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on February, 7, 2018: "I use every three days and my hair is shedding REALLY bad"

- https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products on December 2011: "A gal in my office and I are both losing handfuls of hair when using these products and I wasn't sure if it's the Deva products or the CG method in general causing the issue. I am a fine porous 3a / 3b and my friend has course 4a thick hair. Thanks!"

- https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products on November 2013: "it happens to me, too. I'm using Deva Products, and for the last 3 months, I'm losing hair handful after handful!"

- https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products on November 2013: "It happened to me using the no poo, because of the wheat protein (I'm a gluten free gal). Can't say that this would be the same case for you. Try switching up your products to see if it still happens. I used their low poo and one condition without any problems."

- https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products on March 2014: "I've been experiencing this also! I'm a little freaked out as I'm getting married in September, and I'm afraid I won't have any hair left by then!

I've been using CG method for about 3 years. Was using WEN but found it to be too expensive to keep up. I switched to Deva about a year ago. I've been using Lo-Poo once a week, then One condition and styling cream every other day. Lately, I've been taking gobs of hair out of the shower drain. I haven't changed meds, or anything else that I can think of, so I'm wondering what's going on.

I'd make a switch to something else, but I want to be sure I'm still 100% sulfate and silicone free. Any suggestions?"

- https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products on March 2014: "Thanks! A quick observation this morning...I used Lo-Poo and One Cond today, and just now, I found myself itching my scalp. :sad1: HHmmmmm....I wonder how long I've been doing this subconsciously without noticing it! Even thought I only use it once a week, maybe it's the Lo Poo and not the One that's causing the issue.

I'm going to try KMF Whenever, and also I'm reading a lot about Trader Joe's <u>conditioners</u>, so that may be another option to try."

- <u>https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products</u> on May 2016 "Hey, I really appreciate your post about the problems you are having with hair loss. I am new to the NaturallyCurly world and I am still working on being acclimated. Anyway, I too am having a similar problem. I was using a really nice <u>shampoo</u> and conditioner that had Keratin in it and I was loving it. Several months back, I saw a commercial for Wen and thought I would give it a try. After about a month of using it, my hair started to fall out. I switched back to a lathering shampoo until about five months ago. I went and tried a Deva Cut for the first time and bought all of the products. As I am sure most would agree, I fell in love with the stuff. My hair felt and looked great. Now, the ball of hair in my shower nearly doubles in size from one day to the next. I am not sure if it isn't clearing my scalp properly or it is causing more build up that usual but all I know is it has me concerned.

I also had some itching when I first started using the products. That had me concerned but it went away after I started to use the products regularly. I have been a Ouidad girl from about 20 years, give or take, and I just started to try new things. After this experience, I am not sure what to do. I am taking a break from Deva Curl for a little while and I will go back to my out routine and see if I notice a difference. I really think that is the only way to tell.

I'm not sure what it is worth but I was using shampoo and conditioner by OGX called <u>Brazilian Keratin Therapy</u>. It was designed for women who get Brazilian Keratin Treatments, something I fell victim too as well. At any rate, it works beautifully in conjunction with my Ouidad products. I'm also not sure if my hair type has anything to do with all of this. My curls are tight and spirally. a pencil fits inside them perfectly. My hair is very fine but I have a lot of it!"

85.    Because of the pervasive complaints in respect to the Products, Defendant has knowledge of the alleged defects.  Indeed, in January, Defendant issued a public statement acknowledging the alleged defects but **refused** to take responsibility for the problem and otherwise refused to cure the alleged defects and remedy consumers.[39]

## CLASS ACTION ALLEGATIONS

86.    Plaintiffs bring this action individually and as representatives of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Class:

**North Carolina Class: All persons in North Carolina who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

87.    Specifically excluded from these definitions are (1) any and all persons who purchased the Products directly from Defendant; (2) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (3) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (4) Class Counsel.

88.    As used herein, "Class Members" shall mean and refer to the members of Class, including Plaintiffs.

~~89.~~    Plaintiffs seek damages and equitable relief on behalf of themselves and the Class Members.  Plaintiffs acknowledge that sub-classes may be needed as discovery commences and informs on the types of personal injuries and damages class members have sustained.

---

[39] https://www.abcactionnews.com/news/national/florida-hairstylist-among-customers-claiming-devacurl-products-caused-serious-damage (last visited February 19, 2020).

90.    <u>Numerosity</u>: Although the exact number of Class Members is uncertain at this time and can only be ascertained through discovery, the number is great enough such that joinder is impracticable.   The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

91.    <u>Typicality</u>: The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, purchased the Products that were manufactured and distributed by Defendant.  Plaintiffs, like all Class Members, have been damaged and/or injured by Defendant's misconduct in that, *inter alia*, they have incurred or will continue to incur damage as a result of overpaying for a product that does not perform as advertised and instead causes hair loss, scalp irritation, relaxing of curls, thinning, breakage, and balding . Furthermore, the factual basis of Defendant's misconduct is common to all Class Members because Defendant has engaged in a systematic fraudulent behavior, that was deliberate, includes negligent misconduct, and results in the same injury to all Class Members.

92.    <u>Commonality</u>: Plaintiffs have numerous questions of law and fact common to themselves and Class Members that predominate over any individualized questions.   These common legal and factual issues include:

    a.  Whether the Products are defective such that they cause hair loss, scalp irritation or balding;

    b.  Whether and when Defendant had exclusive knowledge that the Products are defective but failed to disclose the defect to the public;

    c.  Whether the Products provide the benefits claimed by Defendant on the labeling, packaging, and/or in the course of its marketing;

    d.   Whether Defendants' conduct violated the consumer fraud laws invoked herein;

    e.   Whether Defendant's conduct constituted a breach of applicable warranties;

    f.   Whether Defendant's acts and omissions make it liable to Plaintiffs and the Class for negligence and products liability;

    g.   Whether Defendant engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by objectively misleading Plaintiffs and putative Class members;

    h.   Whether Defendant's conduct, as alleged herein, was likely to mislead a reasonable consumer;

    i.   Whether Defendant's statements, concealments and omissions regarding the Products were material, in that a reasonable consumer could consider them important in purchasing the Products;

    j.   Whether, as a result of Defendant's omissions and/or misrepresentations of material facts, Plaintiffs and members of the Class have suffered an ascertainable loss of monies and/or property and/or value;

    k.   Whether, as a result of Defendant's omissions and/or misrepresentations of material facts, Plaintiffs and members of the Class and Subclasses[40] have suffered ascertainable personal injuries, entitling them to damages; and

---

[40] Subclasses are anticipated to be set forth after the extent of personal injury damages become known through discovery.

l.   Whether Plaintiffs and Class members are entitled to monetary damages, injunctive relief, and/or other remedies and, if so, the nature of any such relief.

93.    <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

94.    <u>Predominance and Superiority</u>: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

95.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class appropriate.

**COUNT 1**
**VIOLATION OF MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301, *et seq.***

96.     Plaintiffs bring this count on behalf of themselves and the Class and repeat and re-allege all previous paragraphs, as if fully included herein.

97.     The Products are consumer products as defined in 15 U.S.C. § 2301(1).

98.     Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3), and are persons entitled under the applicable state laws to enforce against the warrantor the obligations of its express and implied warranties.

99.     Plaintiffs purchased Products costing more than $5 and their individual claims are greater than $25 as required by 15 U.S.C. §§ 2302(e) and 2310(d)(3)(A).

100.    Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

101.    The Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1), provides a cause of action for any consumer, who is damaged by the failure of a warrantor to comply with a written or implied warranty.

102.    Defendant made promises and representations in an express warranty provided to all consumers, which became the basis of the bargain between Plaintiffs, and Class members and Defendant.

103.    Defendant's written affirmations of fact, promises and/or descriptions as alleged—including promises that the Products promote healthy curly hair, are "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicons to gently cleanse curls without stripping the natural oils they need to look healthy, bouncy and simply gorgeous," sourced from "the highest-quality, good-for-you ingredients from around the world,"

and that they give "your curls what they need and nothing they don't,"[41] — are each a "written warranty." The affirmations of fact, promises, and/or descriptions constitute a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(6).

104.    Defendant also advertises, markets, and promotes its Products, including but not limited to on its website, as coming with a "satisfaction guarantee," which states that if a consumer/purchaser is not "completely satisfied with a DevaCurl product that you purchased from us or one of our authorized resellers" "for any reason," Defendant will allow for a return and provide a full refund of the purchase price.[42] The complete satisfaction guarantee constitutes a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(6).

105.    Further, Defendant provided Plaintiffs and the other Class members with an implied warranty of merchantability in connection with the purchase of the Products that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

106.    As a part of the implied warranty of merchantability, Defendant warranted to Plaintiffs and Class members that the Products were of merchantable quality (i.e., a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

107.    Defendant breached all applicable warranties, as described in more detail above, and is therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Products suffer from latent and/or inherent defects that cause substantial hair loss,

---

[41]https://www.devacurl.com/us/curl-101/product-philosophy  https://www.devacurl.com/us/curl-101/product-philosophy/ingredient-glossary (last visited February 19, 2020).
[42] https://www.devacurl.com/us/faq#shipping (last visited February 19, 2020).

hair breakage, relaxing of curls, and scalp irritation, rendering the Products unfit for their intended use and purpose. This defect substantially impairs the use, value, and safety of the Products.

108.    Any effort to limit the implied warranties in a manner that would exclude coverage of the Products is unconscionable, and any such effort to disclaim, or otherwise limit, for the defective Products is null and void. Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendant, on the one hand, and Plaintiffs and the other Class members, on the other. Moreover, any limitations on the warranties are substantively unconscionable. Following early reports of injuries caused by the Products, including multiple complaints to the FDA beginning in February 2018, Defendant knew that the Products were defective and would continue to pose safety risks. Defendant failed to disclose the product defect to Plaintiffs and the Class members. Thus, Defendants enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

109.    Plaintiffs and each of the other Class members have had sufficient direct dealings with Defendant to establish privity of contract. Further, Plaintiffs are intended third-party beneficiaries of contracts between Defendant and its third-party retailers, and specifically of the implied warranties. Third-party retailers such as Ulta Beauty and Amazon were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements provided with the Products; the warranty agreements were designed for and intended to benefit consumers.

110.    Nonetheless, privity is not required pursuant to N.C. Gen Stat. § 99B-2(b), as Plaintiffs and each of the other Class members sustained personal injuries and are entitled to bring an action for breach of implied warranty directly against the manufacturer.

111.    All conditions precedent to seeking liability under this claim for breach of express and implied warranty have been performed by or on behalf of Plaintiffs and others in terms of paying for the goods at issue.

112.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs and the Class are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs and the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

113.    Furthermore, affording Defendant an opportunity to cure its breach of written warranties would be unnecessary and futile here. Defendant was placed on reasonable notice of the defect in the Products and breach of the warranties based on numerous complaints received directly and indirectly from Plaintiffs and the Class, including without limitation multiple complaints to the FDA beginning in February 2018, and have had ample opportunity to cure the defect for Plaintiffs and the Class, but have failed to do so, instead denying the claims and putting out public statements denying that there are any issues with the Products. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs and the Class resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure the breach of warranty is excused and thereby deemed satisfied.

114.    While notice is not required (for the reasons set forth above), on March 3, 2020, Plaintiffs sent a letter to Defendant giving notice of its violations of its express and implied warranties and demanding that Defendant correct such violations.

115.    Defendant's breaches of warranty have caused Plaintiffs and the other Class members to suffer personal injuries and economic loss, including paying for defective Products

and entering into transactions they would not have entered into at all, or not for the consideration paid. As a direct and proximate result of Defendant's breaches of warranty, Plaintiffs and the Class have suffered damages and continue to suffer damages, including personal injuries and economic damages in terms of the cost of the Products and the cost of efforts to mitigate the damages caused by same.

116.    Pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are also entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

**COUNT 2**
**BREACH OF EXPRESS WARRANTY**

117.    Plaintiffs bring this count on behalf of themselves and the Class and repeat and re-allege all previous paragraphs, as if fully included herein.

118.    Defendant sold and Plaintiffs purchased the Products from authorized resellers of Defendant's products.

119.    Defendant represented in its marketing, advertising, and promotion of the Products that the Products promote healthy curly hair, and are "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicons to gently cleanse curls without stripping the natural oils they need to look healthy, bouncy and simply gorgeous," sourced from "the highest-quality, good-for-you ingredients from around the world" and that they give "your curls what they need and nothing they don't."[43]

---

[43] https://www.devacurl.com/us/curl-101/product-philosophy (last visited February 19, 2020).

120.    Defendant also advertises, markets, and promotes its Products, including but not limited to on its website, as coming with a "satisfaction guarantee," which states that if a consumer/purchaser is not "completely satisfied with a DevaCurl product that you purchased from us or one of our authorized resellers" "for any reason," Defendant will allow for a return and provide a full refund of the purchase price.[44]

121.    Defendant made these representations to specifically induce Plaintiffs and Class Members to purchase the Products.

122.    Defendant's representations about the Products constituted part of the basis of the bargain between Defendant and Plaintiffs (and Class Members).

123.    Each of these representations and the complete satisfaction guarantee constitutes an express written warranty.

124.    Defendant breached its express warranties because the Products suffer from a latent and/or inherent defect that causes them to produce substantial hair loss, scalp irritation, and loss of curls, rendering them unfit for their intended use and purpose.  This defect substantially impairs the use, value and safety of the Products.

125.    The latent and/or inherent defect at issue herein existed when the Products left Defendant's possession or control and was sold to Plaintiffs and Class members. The defect was undiscoverable by Plaintiffs and the Class members at the time of purchase of the Products.

126.    While Defendant expressly disavows all warranties or representations, this disavowal is limited by its own plain language to "any products or services ordered or provided via the [Defendant's] website.[45]   None of the Products at issue in this case (including those

---

[44] https://www.devacurl.com/us/faq#shipping (last visited February 19, 2020).
[45]  https://www.devacurl.com/us/terms-conditions  (last visited February 19, 2020).

purchased by the Plaintiffs) were products "ordered or provided via the [Defendant's] website," and all persons who purchased the Products from Defendants' website are expressly excluded from the putative Class.

127.    Plaintiffs and the Class are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs and the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

128.    Furthermore, affording Defendant an opportunity to cure its breach of written warranties would be unnecessary and futile here.  Defendant was placed on reasonable notice of the defect in the Products and breach of the warranties based on numerous complaints received directly and indirectly from Plaintiffs and the Class, including without limitation multiple complaints to the FDA beginning in February 2018, and have had ample opportunity to cure the defect for Plaintiffs and the Class, but have failed to do so, instead denying the claims and putting out public statements denying that there are any issues with the Products.[46]    Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs and the Class resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure the breach of warranty is excused and thereby deemed satisfied.

129.    While notice is not required (for the reasons set forth above), on March 3, 2020, Plaintiffs sent a letter to Defendant giving notice of its violations of its express and implied warranties and demanding that Defendant correct such violations.

---

[46] https://www.devacurl.com/us/deva-community-statement (last visited February 19, 2020).

130.     As a direct and proximate result of Defendant's breaches of these express warranties, Plaintiffs and Class Members have sustained personal injuries and been damaged because they did not receive the products as specifically warranted by Defendant. Plaintiffs also paid a premium for Defendant's Products that did not conform to Defendant's express warranties.

## COUNT 3
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

131.     Plaintiffs bring this count on behalf of themselves and the Class and repeat and re-allege the above paragraphs, as if fully included herein.

132.     Defendant is a "merchant" within the meaning of the UCC because it deals in the sale of the Products and holds itself out as "having knowledge or skill peculiar to" haircare products such as the Products at issue.

133.     Defendant sold and Plaintiffs purchased the Products from authorized resellers of Defendant's products.

134.     By placing such products into the stream of commerce, Defendant impliedly warranted to Plaintiffs and Class members that the Products were of merchantable quality (*i.e.*, a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

135.     Defendant breached the implied warranty of merchantability because the Products suffer from a latent and/or inherent defect that causes them to produce substantial hair loss and scalp irritation and loss of curls, rendering them unfit for their intended use and purpose. This

defect substantially impairs the use, value, and safety of the Products. The latent and/or inherent defect at issue herein existed when the Products left Defendant's possession or control and were sold to Plaintiffs and Class members. The defect was undiscoverable by Plaintiffs and the Class members at the time of purchase of the Products.

136.    Defendant has misled consumers into believing the Products were "Sulfate Free," that they are used to "gently cleanse," that they are not "harsh" or made with "harsh ingredients," and that hair loss and shedding (even excessive shedding) was "common," "normal," and "not preventable." Defendant took advantage of Plaintiffs' and the Class's trust and confidence in its brand, and deceptively sold the Products, knowing that they caused hair loss, shedding, and scalp irritation.

137.    Defendant's intended beneficiaries of these implied warranties were ultimately Plaintiffs and the Class, not distributors who sold the Products. Moreover, Defendant exercises substantial control over which outlets can carry and sell the Products, which are the same places that Plaintiffs purchased them. In addition, Defendant's warranties are in no way designed to apply to the distributors that purchase the Products in bulk and then sell them on an individual basis to each consumer.  Individual consumers are the ones who ultimately review the labels, which Defendant knows, prior to making any purchasing decisions. As a result, these warranties are specifically designed to benefit the individual consumer who purchases the Products.

138.    Plaintiffs and Class Members sustained personal injuries and economic damages as a direct and proximate result of Defendant's breaches.  Plaintiffs sustained scalp irritation, hair loss, balding, and loss of curls.  They also paid a premium for the Products that they would not have otherwise paid. Plaintiffs and the Classes did not receive the value of the Product they paid for—the Products are worthless or worth far less than Defendant represents due to the latent and/or

inherent defect that causes hair loss and scalp irritation.  Moreover, the Products are marketed to those with curly hair and promise "to gently cleanse curls without stripping the natural oils they need to look healthy, bouncy and simply gorgeous,"[47] but the Products actually cause hair to lose its curl, thin, and fall out.

139.    Plaintiffs and the Classes have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable practices.

140.    As a result of the breach of the implied warranty of merchantability, Plaintiffs and Class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain and for personal injuries.

**COUNT 4**
**UNJUST ENRICHMENT**
**(In the Alternative to Counts 1-3)**

141.    Plaintiffs bring this count on behalf of themselves and the Class and repeat and re-allege the above paragraphs, as if fully included herein.

142.    According to Defendant's website, New York law applies to all claims.[48]

143.    Plaintiffs conferred benefits on Defendant by purchasing the Products at a premium price.  Such benefits were not conferred officiously, and such benefits were not gratuitous.

144.    Defendant has knowledge of such benefits and accepted them.

145.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of the Products, because the Defendant will obtain the benefits conferred by Plaintiffs and the Class Members without adequately compensating Plaintiffs

---

[47] https://www.devacurl.com/us/curl-101/our-story (last visited February 19, 2020).

[48] https://www.devacurl.com/us/terms-conditions (last visited February 21, 2020).

and the Class Members therefore.  Defendant failed to adequately compensate the Plaintiffs for the benefits conferred by providing the No-Poo Products without those products having the characteristics and benefits promised.

146.    Retention of those moneys under these circumstances is unjust and inequitable because (a) Defendant falsely and misleadingly represented that the Products promoted healthy hair, were "Sulfate Free," that they are used to "gently cleanse," that they are not "harsh" or made with "harsh ingredients," and that hair loss and shedding (even excessive shedding) was "common," "normal," and "not preventable." (b) Plaintiffs paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because of the latent and/or inherent defect that causes hair loss and scalp irritation.

147.    This has resulted in injuries to Plaintiffs and members of the Class because they would not have purchased (or paid a price premium) for the Products had they known of the latent and/or inherent defect that causes hair loss and scalp irritation in Defendant's Products.

148.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, and because equity and good conscience requires restitution, Defendant must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

## COUNT 5
## NEGLIGENCE – FAILURE TO WARN

149.    Plaintiffs bring this count on behalf of themselves and the Class and repeat and re-allege all above paragraphs, as if fully included herein.

150.    According to Defendant's website, New York law applies to all claims.[49]

151.    At all times referenced herein, Defendant was responsible for designing, formulating, testing, manufacturing, inspecting, distributing, marketing, supplying and/or selling the Products to Plaintiffs and the Class.

152.    At all times material hereto, the use of the Products in a manner that was intended and/or reasonably foreseeable by Defendant involved substantial risk of hair loss and scalp irritation.

153.    At all times the risk of substantial hair loss and scalp irritation was known or knowable by Defendant, in light of the generally recognized and prevailing knowledge available at the time of manufacture and design, as described herein.

154.    Defendant, as the developer, manufacturer, distributor and/or seller of the Products, had a duty to warn Plaintiffs and the Class of all dangers associated with the intended use.

155.    After receiving multiple complaints of hair loss and scalp irritation, including multiple adverse event reports to the FDA, and after dozens (if not hundreds) of online postings reporting hair loss and scalp irritation after using the Products, a duty arose to provide a warning to consumers that use of the Products could result in hair loss or scalp irritation.

156.    Defendant was negligent and breached its duty of care by negligently failing to give adequate warnings to purchasers and users of the Products, including Plaintiffs and the Class, about the risks, potential dangers and defective condition of the Products.

157.    Defendant was negligent and breached its duty of care by negligently blaming other risk factors for hair loss, by telling consumers that hair loss and shedding was "common," "normal," and "not preventable," thereby concealing and failing to warn purchasers and users o f

---

[49] *Id.*

the Products, including Plaintiffs and the Class, about the risks, potential dangers, and defective condition of the Products.

158.    Defendant knew, or by the exercise of reasonable care, should have known of the inherent design defects and resulting dangers associated with using the Products as described herein, and knew that Plaintiffs and Class members could not reasonably be aware of those risks. Defendant failed to exercise reasonable care in providing the Class with adequate warnings.

159.    As a direct and proximate result of Defendant's failure to adequately warn consumers that use of the Products could cause injuries such as hair loss, balding and/or scalp irritation, Plaintiffs and the Class have suffered damages as set forth herein.

### COUNT 6
### NEGLIGENCE – FAILURE TO TEST

160.    Plaintiffs bring this count on behalf of themselves and the Class and repeat and re-allege the above paragraphs, as if fully included herein.

161.    According to Defendant's website, New York law applies to all claims.[50]

162.    Defendant did not perform adequate testing on the Products, which were defectively designed, formulated, tested, manufactured, inspected, distributed, marketed, supplied and/or sold to Plaintiffs and the Class.

163.    Adequate testing would have revealed the serious deficiencies in the Products in that it would have revealed the substantial hair loss and scalp irritation occasioned by use of the Products.

---

[50] *Id.*

164.    Defendant had, and continues to have, a duty to exercise reasonable care to properly design—including the duty to test—the Products before introducing them into the stream of commerce.

165.    Defendant breached these duties by failing to exercise ordinary care in the design and testing of the Products, which it introduced into the stream of commerce, because Defendants knew or should have known the Products could cause substantial hair loss and scalp irritation.

166.    Defendant knew or reasonably should have known that Class members such as Plaintiffs would suffer economic damages or personal injury and/or be at an increased risk of suffering damage and injury, as a result of its failure to exercise ordinary care in the design of the Products by failing to conduct appropriate testing.

167.    By reason of the foregoing, Plaintiffs and the Class experienced and/or are at risk of experiencing financial damage and personal injury.

168.    As a direct and proximate result of Defendants' failure to test the Products designed, formulated, manufactured, inspected, distributed, marketed, warranted, advertised, supplied and/or sold by the Defendant, Plaintiffs and the Class have suffered damages as described above.

## COUNT 7
## VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

169.    Plaintiffs incorporate by reference the above paragraphs of this Complaint as if fully stated herein.

170.    The North Carolina Unfair and Deceptive Trade Practices Act (the "UDTPA"), N.C. Gen. Stat. § 75-1.1, *et seq*., prohibits the use of unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

171. Defendant's conduct described herein constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendant's trade or commerce.

172. Defendant intended that Plaintiffs and each of the members of the Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

173. Defendant knew or should have known that its representations of fact concerning the Products are material and likely to mislead consumers.

174. Defendant's practices, acts, and course of conduct in marketing and selling the Product are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiffs, members of the Class would not have purchased the Products had they known the truth about them.

175. Plaintiffs and members of the Class have been directly and proximately damaged by Defendant's actions.

176. As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Class have sustained damages in an amount to be proven at trial.

177. In addition, Defendant's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate.

### **RELIEF DEMANDED**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, prays for relief against Defendant, as follows:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel;

b. For an order declaring that Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e. For treble damages as allowed by law;

f. That costs and expenses of this action be taxed against Defendants;

g. For prejudgment interest on all amounts awarded;

h. For an order of restitution and all other forms of equitable monetary relief;

i. For injunctive relief as pled or as the Court may deem proper;

j. For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit as allowed by law;

k. For trial by jury on all issues so triable; and

l. For such other relief that the Court finds just and proper.

This the 28th day of April, 2020.

Respectfully submitted,

**IMBESI LAW GROUP P.C.**

/s/ Brittany Weiner, Esq.
Brittany Weiner, Esq.
1501 Broadway, Suite 1915
New York, New York 10036
Telephone: (646) 767-2271
Facsimile: (212) 658-9177
brittany@lawicm.com

**RHINE LAW FIRM, P.C.**

Joel R. Rhine, Esq.*
Martin A. Ramey, Esq.*
jrr@rhinelawfirm.com
mjr@rhinelawfirm.com
1612 Military Cutoff Road
Suite 300
Wilmington, NC 28403
Telephone: (910) 772-9960
Facsimile: (910) 772-9062
jrr@rhinelawfirm.com
mjr@rhinelawfirm.com

*Pro hac vice application to be submitted*

*Counsel for Plaintiffs and the Proposed Class*